**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ORTENSIA TREVINO,** | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | **Civil Action No. 3:15-CV-3299-M-BH** |
| | § | |
| **PECAN DELUXE CANDY COMPANY,** | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for pretrial management. Before the Court for recommendation is the plaintiff's post-judgment motion to reopen her case and for leave to amend her complaint, filed July 25, 2016 (doc. 16), and her proposed amended complaint, filed August 3, 2016 (doc. 17). Based on the relevant filings and applicable law, the motion should be construed as a motion for relief under Fed. R. Civ. P. 60(b) and **DENIED**, and to the extent considered, the motion for leave to amend should be **DENIED.**

**I. BACKGROUND**

On October 13, 2015, Ortensia Trevino (Plaintiff) filed this *pro se* case against her former employer, Pecan Deluxe Candy Company (Defendant), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Title VII). (doc. 3 at 1-2.)[1] Her complaint stated, in its entirety:

> I believe that I have been discriminated against because of my gender female.
>
> I was demoted in September of 2014. I was replaced by [a] male.

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

> I was discharge [sic] on July 7, 2015.
>
> I believe that I have been discriminated against because of my gender female in violation of Title VII of the Civil Rights Act of 1964 as amended.

(*Id.* at 1.) On November 9, 2015, Defendant moved to dismiss this action. (*See* doc. 10.) By order dated November 10, 2016, a briefing schedule was established for the motion. (*See* doc. 10.) Plaintiff did not file a response to the motion, and dismissal with prejudice was recommended on May 26, 2016. (*See* doc. 13.) Plaintiff did not object to the recommended dismissal, the recommendation was accepted, and final judgment was entered June 20, 2016. (*See* docs.14, 15.)

On July 25, 2016, Plaintiff filed a one-paragraph motion to amend her complaint, alleging that she had "just received the envelope July 19, 2016" due to problems with the mail carriers and was "filing within fourteen days of receiving it." (*See* doc. 16.) She did not specify whether "the envelope" contained the recommendation for dismissal or the order accepting the recommendation and judgment. (*See* id.)

## II. RULE 60(b)

Plaintiff's request to reopen her case may be liberally construed as a motion seeking relief under Federal Rule of Civil Procedure 60(b). *See Smith v. Texas Dept. of Criminal Justice, Institutional Div.* 79 F. App'x 61, 62, (5th Cir.2003) (construing prisoner's motion to reopen his dismissed § 1983 civil rights action as arising under Rule 60(b)) (citing *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir.1998)).

Rule 60(b) provides that upon such a motion, a court may relieve a party from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered earlier; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the

2

judgment is void; (5) the judgment has been satisfied, released, or discharged, or it is based on an earlier judgment that has been reversed or vacated, or that applying the judgment prospectively is no longer equitable; or (6) any other reason that justifies relief. FED. R. CIV. PROC. 60(b)(1)-(6). Here, Plaintiff's allegation of lack of notice implicates subsections (1) and (6).

A.     **60(b)(1)**

There is a "high bar for what a party must show to receive relief under Rule 60(b)(1). 'Implicit in the fact that Rule 60(b)(1) affords extraordinary relief is the requirement that the movant make a sufficient showing of unusual or unique circumstances justifying such relief.'" *Williamson v. City of Morgan City,* 428 F. App'x 356, (5th Cir. 2011) (quoting *Pryor v. U.S. Postal Service,* 769 F.2d 281, 286 (5th Cir.1985)). A lack of notice may serve as a basis for a Rule 60(b)(1) motion under the excusable neglect exception. *See Quilling v. Schonsky*, 247 F. App'x 583, 587 (5th Cir. 2007) (citing *McKenzie v. Principi*, 83 F. App'x 642 (5th Cir. 2003)). "[E]xcusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 393-94 (1993). When determining whether there has been excusable neglect, courts review "all relevant circumstances surrounding the party's omission," including (1) "the danger of prejudice to the [non-movant], (2) the length of the delay and its potential impact on judicial proceedings, and (3) the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Johnson v. Potter*, 364 F. App'x 159, 164 (5th Cir. 2010) (citing *Pioneer Inv. Serv. Co.*)).

With regard to the first factor, Plaintiff has not addressed whether Defendant would be prejudiced by reopening the case, and it did not respond to her motion to reopen. No danger of

3

prejudice from reopening the case is apparent. Although dismissal of Plaintiff's complaint under Fed. R. Civ. P. 12(b) was recommended for failure to state a claim, she was afforded an opportunity to amend her complaint to state her best case. (*See* doc. 13.) Allowing her to now reopen her case to amend her complaint would place Defendant in the same position as if she had timely filed an amended complaint. This factor weighs in favor of reopening.

The second factor of the test focus on the length of delay and the potential impact on judicial proceedings. Plaintiff claims that she received "the envelope" on July 19, 2016, and that she filed her motion within fourteen days of receipt. Her motion was filed on July 25, 2016, which was approximately four weeks after entry of the final judgment. (*See* doc. 16.) Based on this length of delay after the judgment, and no apparent potential impact on judicial proceedings, this factor also weighs in favor of reopening.

The final factor of the test concerns the reason for the delay, including whether it was within Plaintiff's reasonable control, and whether she acted in good faith. She makes a general contention of problems with the mail carriers and that she needed to talk to the local post office about not receiving mail but provides no specifics otherwise. (*See id.*) Plaintiff does not explain when the problems started, what she did to address the issue, and what she efforts she made to stay informed about the status of her case despite these issues. The Fifth Circuit "has pointedly announced that a party has duty of diligence to inquire about the status of a case, and that Rule 60(b) relief will be afforded only in '"unique circumstances."'" *Pryor,* 769 F.2d at 287 (5th Cir.1985) (citing *Wilson v. Atwood Group*, 725 F.2d 255, 257-58 (5th Cir.) (en banc)). Moreover, Plaintiff does not allege that she failed to receive Defendant's motion to dismiss or the order setting the briefing schedule, and she does not explain her failure to respond to a motion that was filed six months before the

4

recommendation for dismissal. *See Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 471 (5th Cir. 1998) ("Our caselaw allows for more leniency in opening up *default* judgments, not those in which the court has had a chance to evaluate the merits"); *McKenzie*, 83 F. App'x at 644 ("Greater leniency should be exercised in finding excusable neglect where failure to grant a motion for relief would result in a default judgment."). She has not alleged or shown a lack of notice that her case might be dismissed on the merits for failure to state a claim.

Further, as noted, she claims that she received "*the* envelope" on July 19, 2016, but she does not address whether she received the other envelope timely. Nor does she identify which of the two envelopes she received on that date, i.e., the one containing the recommendation for dismissal, or the one containing the order accepting the recommendation and judgment. Even after allegedly receiving some notice, she still waited fourteen days to file her motion.

Under the circumstances, and considering the relevant factors, Plaintiff has not demonstrated good faith. She has not shown unusual or unique circumstances justifying relief under Rule 60(b)(1) for excusable neglect.

**B.      60(b)(6)**

Plaintiff's contentions may also be construed as arising under the "catch-all" clause of Rule 60(b)(6). *See Hess v. Cockrell*, 281 F.3d 212, 215-16 (5th Cir. 2002). It is "a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances." *Steverson v. Global Santa Fe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quoting *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F. 2d 599, 604-05 (5th Cir. 1986)). Motions under this clause "will be granted only if extraordinary circumstances are present." *Hess*, 281 F.3d at 216.

In *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981), the Fifth Circuit set forth

the following considerations when evaluating such a motion under 60(b)(6): 1) that final judgments should not lightly be disturbed; 2) that a Rule 60(b) motion should not be used as a substitute for appeal; 3) that the rule should be liberally construed in order to achieve substantial justice; 4) whether, if the case was not decided on its merits due to a default or dismissal, the interest in deciding the case on its merits outweighs the interest in the finality of the judgment and there is merit in the claim or defense; 5) whether, if the judgment was rendered on the merits, the movant had a fair opportunity to present his claims; 6) whether there are intervening equities that would make it inequitable to grant relief; and 7) any other factors relevant to the justice of the judgment under attack.

Here, Plaintiff's allegations that she did not have an opportunity to amend her complaint because her mail carrier failed to timely deliver one envelope do not rise to the level of extraordinary circumstances in this case. There were multiple mailings about the motion to dismiss. Plaintiff has not alleged sufficient facts to support a finding in her favor under the *Seven Elves* factors.

In conclusion, Plaintiff has not shown exceptional or extraordinary circumstances such that denial of her Rule 60(b) motion would be "so unwarranted as to constitute an abuse of discretion." *See Vafaiyan v. City of Wichita Falls*, 398 F. App'x 989, 990 (5th Cir. 2010) (noting standard of review for denial of Rule 60(b) motions).

### III. RULE 15(a)

Plaintiff also moves for leave to amend her complaint. A post-judgment motion to amend a complaint may only be granted if a judgment is first vacated under Rule 59 or 60, and it should be denied unless a plaintiff clearly establishes that she could not raise the new evidence or argument prior to judgment. *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000). As discussed, Plaintiff

has not provided a basis for vacating the judgment under Rule 60. Any post-judgment motion for leave to amend is therefore subject to denial. Even if considered, however, Plaintiff's motion for leave to amend is also subject to denial.

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend her pleading once as a matter of course within 21 days after serving it, or if a responsive pleading is required, within 21 days of receiving the responsive pleading or a motion under Rule 12(b)(e), or (f). Otherwise, a party may amend only with leave of court or the opposing parties' consent. Fed. R. Civ. P. 15(a)(2). Rule 15(a) has a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982). Leave to amend should not be denied unless there is a *substantial reason* to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

In the context of Rule 15(a), the Fifth Circuit has interpreted futility to mean that "the amended complaint would fail to state a claim upon which relief could be granted," so courts must apply the same standard as under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Leave to amend does not need to be granted when the amended complaint would not defeat a motion to dismiss. *See Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (5th Cir. 1991). A "district court does not abuse its discretion in denying leave to amend when amendment

7

would be futile." *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 310 (5th Cir. 2011) (citing *Briggs v. Mississippi,* 331 F.3d 499, 508 (5th Cir. 2003)).

A. **Gender Discrimination**

Plaintiff's initial complaint was dismissed for failure to state a claim because she failed to allege facts that set forth a prima facie case of discrimination in employment based on gender. (*See* doc. 13 at 3-6.)

Title VII prohibits discrimination against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Generally, a plaintiff must establish a prima facie case of discrimination by showing that she (1) is a member of a protected group, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam). While a plaintiff's complaint need not plead a prima facie case of discrimination in the motion to dismiss context, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the prima facie elements are not entirely irrelevant, and no plaintiff is exempt from her obligation to allege sufficient facts to state all the elements of her claim. *See Puente v. Ridge*, 324 F. App'x 423, 427-28 (5th Cir. 2009).

Here, Plaintiff's proposed amended complaint is almost identical in wording to her original complaint, but is accompanied by 83 pages of filings in this lawsuit and documents relating to the proceedings before the Equal Employment Opportunity Commission (EEOC). (*See* doc. 17.) The only new allegations in the complaint are contained in two statements that generally describe her progression in the company, the Vice President of Operation's (VP Operation) low opinion of her,

8

her good working relationship with the plant manager, and a subsequent new department manager's treatment of her. (*Id.* at 58-60.) She also provides a letter from an attorney to the Defendant's Human Resources Director/General Counsel, which addresses the same matters. (*Id.* at 67-68.)

More specifically, these documents allege that Plaintiff was a supervisor "managing all manufacturing and quality functions," and that "[t]hings did not go well . . . [because] [p]roduction was down and quality was not doing well." (*Id.* at 58.) A new plant manager was hired, and he was allegedly told by VP Operations that Plaintiff was a "liar and poor employee," and that "[she] should be the first person that he should fire." (*Id.*) She also alleges that VP Operations referred to her and other unidentified female employees as "lying bitches" at some unidentified time. (*Id.*) The new plant manager liked Plaintiff, however, and he made her a Floor Quality Control Supervisor, a position in which she did well. (*Id.*) After the plant manager left, a Quality Assurance Manager (QA Manager) was hired in 2014 to run the department. (*Id.* at 58, 60.) Although Plaintiff alleges that the QA Manager was a manager who ran the department, and she was a floor supervisor, she also claims that he had the same job title as her, and that she was demoted because they both could not have the same job title.[2] (*Id.* at 60.)

According to Plaintiff, "when [the QA Manger] started that's when [her] problems started." (*Id.*) She alleges that the QA Manager's dislike of her and her demotion were the result of VP Operation's comments about her performance to the QA Manager. (*Id.* at 58.) She alleges that "[the VP Operation] did not like [her] and considered [her] a liar and an idiot. . . . From day one [the QA

---

[2] In a separate letter by her prior counsel, Plaintiff also seems to allege that "[she] was approached by Human Resources and told that her salary was going to be reduced from $25 an hour to $16 an hour. . . . [and that after a negotiation,] [she] and Human Resources agreed to a reduced pay rate of $19 an hour." (doc. 17 at 67.)

9

Manager] treated [Plaintiff] as if [she] was the worst employee in the world." (*Id.*) She thinks that VP Operation told the QA Manager the same things about her that he said to the former plant manager. (*Id.*) Although Plaintiff is not clear on an exact date, she also alleges that sometime in 2014, the QA Manger took her job "overseeing the Steam Boy which was the control panel. . . . [and] the most import machine" in the whole place and gave it to a different female employee. (*Id.* at 60.)

At the time she was fired for work performance, Plaintiff was a quality control technician. (*Id.*) There is no allegation regarding any replacement following her discharge or any disparate treatment of her in comparison to other quality control technicians. (*See id.* at 58-60, 67-68.) The only position that she had until she was replaced by someone else went to another female. (*Id.* at 60.) Although Plaintiff generally alleges that men were treated differently than women, she does not allege any facts supporting an inference that the men of whom she specifically complains were similarly situated to her. (*Id.* at 58) One of the men is VP Operation's brother who works in purchasing, a different department. (*Id.* at 58.) The other is VP Operation's friend, and she does not allege he worked in Plaintiff's department or did the same job. (*Id.*) Accordingly, Plaintiff's proposed amended complaint fails to provide any facts from which an inference may fairly be drawn that she was treated less favorably than other similarly situated male employees.

B. **Race, Color, or National Origin Discrimination and Hostile Work Environment**

Additionally, Plaintiff appears to allege facts related to discrimination based on race, color, or national origin. (*Sed id.*) Specifically, she alleges that "I feel Strongly that [Defendant] has created a Hostile Work Place based on their action towards me and their lack of action toward other *especially that of white men and women.*" (*Id.*) (emphasis added).

10

Before an individual can pursue a Title VII claim in federal court, she must exhaust her available administrative remedies by filing a charge with the EEOC. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-89 (5th Cir. 2002). If a plaintiff files a charge with the EEOC, the scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir.1984); *see also Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir. 2005) (citing *Sanchez*, 431 F.2d at 466).

Here, Plaintiff only checked the box for gender discrimination on her EEOC charge, and failed to make any allegations related to race, color, or national origin discrimination or a hostile work environment. (doc. 17 at 24.) Because the facts alleged in her complaint related to only to a specific demotion and termination based on gender, an investigation reasonably expected to grow out of that charge would not encompass race, color, or national origin discrimination or hostile work environment.[3] To the extent she is seeking to assert these claims, she has failed to exhaust her administrative remedies, and those claims would be subject to dismissal.

In conclusion, Plaintiff's proposed amended complaint fails to provide any facts from which an inference may fairly be drawn that she was treated less favorably than other similarly situated employees outside the protected group. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th

---

[3] Additionally, to the extent that she alleges race, color, or national origin discrimination in the statements attached to the proposed amended complaint, her allegations appear to conflict with her gender discrimination claims previously alleged because she claims that white women were given some form of preferential treatment. (*See* doc. 17 at 58) (noting Defendant's "lack of action toward . . . white men and *women*") (emphasis added).

11

Cir. 2007) (per curiam). Because she fails to allege facts that set forth a prima facie case of discrimination, *see Gille v. Lousiana Dept. of State Civil Serv.*, 559 F. App'x 333, 335 (5th Cir. 2014) (per curiam), Plaintiff has failed to nudge her Title VII claim across the line from conceivable to plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). Additionally, to the extent that Plaintiff seeks to bring new claims for race, color, or national origin discrimination, she has failed to exhaust her administrative remedies with respect to those claims and they are therefore subject to dismissal. Accordingly, her motion for leave to amend should be denied as futile.

## IV. RECOMMENDATION

Plaintiff's request to reopen her case should be **DENIED**, and to the extent considered, her motion for leave to amend her complaint should also be **DENIED**.

**SO RECOMMENDED** on this 14th day of November, 2016.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE